## CAULFIELD v. POLK.

[No. 2,109.   Filed April 21, 1897.].

MECHANIC'S LIEN.— *Contractor.— Sub-materialman.*— A corporation which does not manufacture boilers, but furnishes to mills and factories engines and boilers, using the engines of its own make, and boilers made by a third party, which agrees to furnish a manufacturer an engine and boiler delivered on board the cars, the purchaser to pay the freight charges, is a mere materialman and not a contractor within the meaning of section 7255, Burns' R. S. 1894, so as to give the party furnishing the boiler a materialman's lien.   *pp. 433, 434.*

CONTRACTOR.—*Meaning of the Term.*—A contractor is one who agrees to do a piece of work for another on his own responsibility and credit.   *p. 435.*

MECHANIC'S LIEN.—*Payment Before Filing of Notice.—Rights of Sub-materialman.*—Payment by the owner of real estate to one who had contracted to furnish certain machinery for a building, before the notice of mechanic's lien was filed, and within the time for filing, neither enlarges nor diminishes the right to a lien by a third party who furnished part of the machinery.   *pp. 433–437.*

From the Marion Superior Court.   *Affirmed.*

*C. C. Binkley,* and *Carter & Brown,* for appellant.

*Herod & Herod,* for appellee.

ROBINSON, J.—This was a proceeding by appellant to foreclose a mechanic's lien.   Upon a special finding of the facts, the court stated its conclusions of law in appellee's favor.   The court's conclusions of law upon the facts found, and overruling the motion for a new trial are the errors assigned.

The facts found are, substantially, that, on the 24th day of June, 1893, the appellee entered into a contract with the Eagle Machine Works, a corporation, by which the machine works agreed to sell and furnish to the appellee an engine and boiler for appellee's canning factory, located on certain real estate in

Greenwood, in Johnson county, Indiana; the engine and steam boiler to be delivered on board the cars at Indianapolis, and billed to appellee at Greenwood, appellee to pay the freight. Afterwards the appellant, a manufacturer of steam boilers at Richmond, Indiana, agreed to, and did, furnish to the Eagle Machine Works a steam boiler for the purpose of being used by it in fulfilling the contract with appellee. Pursuant to instructions of the machine works, the appellant, on the 19th day of July, 1893, shipped the boiler from Richmond, Indiana, to the machine works at Indianapolis, at which place it was received by, and the freight paid by the machine works. After adding a door to the boiler, the Eagle Machine Works, on the 22d day of July, 1893, shipped the boiler from Indianapolis to the appellee at Greenwood, by whom it was received a day or two after, and prior to the 1st day of August, 1893, was placed by the appellee in his factory at Greenwood. The engine was furnished appellee by the machine works prior to the 22d day of July, 1893, and was placed in the factory by appellee, having been set in brick and mortar and made a permanent addition to appellee's factory and the real estate on which the same was located. Appellee paid the freight on the boiler from Indianapolis to Greenwood. On the 4th day of August, 1893, appellant filed, and caused to be recorded in the recorder's office of Johnson county, a notice of his intention to hold a mechanic's lien on the real estate on which appellee's factory containing the boiler was located. On the 6th day of August, 1893, appellant gave appellee written notice of the filing of the notice of lien, which was received by appellee on the following day. Appellant has never been paid for the boiler. On the 27th day of July, 1893, appellee settled with the Eagle Machine Works for the engine and boiler by executing his note

at ninety days, negotiable and payable in a bank in this State. On the 28th day of July, 1893, this note was transferred by the Eagle Machine Works to one Charles Latham as collateral on a large indebtedness owing by the machine works to him, Latham, at the time surrendering a like sum of the proceeds of other collaterals theretofore held by him against such indebtedness. Appellee paid the note to Latham at its maturity. On the 31st day of July, 1893, the machine works failed and was placed in the hands of a receiver, which receivership was still pending when this cause was tried. After the payment of appellee's note, Latham had collected from such collaterals a sum sufficient to discharge his debt and had paid to the receiver $500.00 in cash, and that there was still uncollected collaterals of the face value of about $400.00. The Eagle Machine Works did not manufacture boilers, but furnished to mills and factories engines and boilers, using the engines of its own make, but purchasing boilers from other parties. For more than a year prior to the 22d day of July, 1893, the machine works had been purchasing its boilers of the appellant, and it was the custom to settle on the 10th day of the month for all boilers purchased during the preceding month, either by cash or note not exceeding ninety days. In June, 1893, and prior to the 20th day of the month, the machine works had failed to meet its paper maturing during that month, and was asking appellant to renew its notes. On the 22d day of June, 1893, appellant informed the machine works that he could not sell it further goods unless he knew to whom the goods were to be furnished by the machine works, and unless he could have some security for payment of the same. On the last named date the machine works informed appellant that it was about to close a contract with appellee for machinery and that

in the contract was estimated one of appellant's boilers. Upon this information appellant stated to the machine works that he would look up appellee's commercial standing, which he afterwards did, and found the same satisfactory. Since June 26, 1893, the machine works ordered but two boilers from appellant, one of which was never shipped and the other was shipped to Indianapolis in the same car with the boiler for appellee's factory. On all sales of boilers made by appellant to the machine works prior to the 22d day of June, 1893, appellant had taken no mechanic's lien. After the 22d day of June, 1893, and prior to the time the machine works was placed in the hands of a receiver, appellant sold to it only two boilers, the one for appellee's factory and the other shipped by appellant in the same car, and for each of these appellant had taken a mechanic's lien, and each was taken and claimed within ten days after the appointment of the receiver.

Upon the facts found, the court stated as a conclusion of law that the appellant is not entitled to a mechanic's lien. Appellant's counsel contend that the court erred in its conclusion of law, and have directed their arguments to this point only.

Section 7255, Burns' R. S. 1894, provides: "That contractors, sub-contractors, mechanics, journeymen, laborers, and all persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house, mill, manufactory or other building, bridge, reservoir, system of waterworks, or other structure, may have a lien separately or jointly upon the house, mill, manufactory or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description and

Caulfield v. Polk.

on the interests of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both."

Appellant complied with the requirements of the statute as to giving notice, and the only question to be determined is whether the statute gives him a lien upon appellee's property for the value of the boiler.

The statute, in so far as it gives a right to a lien for machinery for the construction, repair or alteration of a mill or factory, has remained practically unchanged since the act of 1853, although the manner of acquiring the lien has been changed frequently.  Section 5293, et seq, R. S. 1881; section 7255, Burns' R. S. 1894 (E. S. 1688).

The lien of a mechanic or materialman is not a common law right, but is a privilege conferred by statute. It does not create any additional right to the debt, but is an additional remedy for the collection of the debt. The remedy is cumulative, and may or may not be employed in connection with the ordinary action for the collection of the debt.   It is no part of the original contract between the parties, and yet a contract, express or implied, must exist as a basis upon which the lien is fixed by complying with the statute.   Its validity is derived only from positive legislative enactment, and a party claiming its benefits must show himself to be within the terms of the particular statute.   The right to the lien rests upon the theory that the value of the property has been enhanced to the extent of the labor done or materials furnished.

The fact that appellee had, before the notice of the lien was filed, and within the time for filing, executed his note to the machine works for the price of the boiler, and that the note was a note payable in a bank

in this State, neither enlarges nor diminishes appellant's right to a lien. Whether that right exists must be determined regardless of whether appellee executed a bank note for the boiler or paid cash for it, or still owes for it. If the right to a lien exists, it attached when the boiler was furnished to the appellee, and if payment during the time allowed for filing the notice can defeat the lien, the statute would be inoperative and its very purpose defeated. *Indiana, etc., R. R. Co.* v. *Larrew*, 130 Ind. 368; *Clark* v. *Huey*, 12 Ind. App. 224.

In the able brief of counsel for appellant, it is argued that the machine works corporation was not a materialman, but that it occupied the position of a contractor; and that even if the corporation was a materialman, our statute is broad enough to confer on a sub-materialman the right to a lien on account of his having furnished a part of the materials or machinery.

Counsel cite the cases of *Colter* v. *Frese*, 45 Ind. 96; *Neely* v. *Searight*, 113 Ind. 316; *Clark* v. *Huey, supra*, and *Smith* v. *Newbaur*, 144 Ind. 95. But in all these cases materials were furnished to contractors or subcontractors, to be by them placed in the building. It is well settled that if machinery is furnished for a factory to one who had authority to place such machinery in it, and the machinery is placed in the factory, the right to the lien exists whether the machinery was furnished to a contractor or a sub-contractor. *Smith* v. *Newbaur, supra*.

Was the machine works corporation a contractor within the meaning of that term as used in the lien law?

It is true, the finding says that the machine works contracted with appellee to furnish appellee an engine and boiler for his factory at Greenwood. In its primary meaning, the word contractor means one who

agrees to do anything for another; but if its meaning is thus restricted there would be no distinction between one who agrees to do a specific job of work without the supervision of another except as to the result, and one who agrees to do a work, but submits himself throughout the work to the discretion of his employer as to details. The courts of this State, in lien cases, have recognized the broader meaning of the term and have recognized a contractor as one who agrees to do a specific work for another upon his own responsibility and credit.

A statute giving to masons and carpenters a lien for their work and materials furnished by them for building and repairing houses was held not to extend to the owner of a mill who furnished lumber. *Pitts* v. *Bomar*, 33 Ga. 96.

So a lumberman was not included in a statute giving all artisans, builders and mechanics of any description a lien for "work and labor as well as for materials furnished by them in and about such work and labor." *Duncan* v. *Bateman*, 23 Ark. 327, 79 Am. Dec. 109.

An act which gives mechanics and artisans of every class a lien upon the articles manufactured or repaired by them for the value of their labor done thereon or materials furnished therefor, does not include materialmen. *Huck* v. *Gaylord*, 50 Tex. 578.

A person who agrees, in the alteration of a building, to furnish, deliver, and set in position certain mantels, tiles and grates and the appurtenances thereof is a materialman, and not an original contractor. *Bennett* v. *Davis*, 113 Cal. 337, 45 Pac. 684, 54 Am. St. 354.

A party who was to furnish the machinery and apparatus for an electric power house, and was to put in the foundation upon which to set the dynamos and furnish the skilled labor necessary for that, and the

further purpose of setting up and connecting the machinery, and installing the incandescent lamps, was held to be a materialman and not a contractor. *Roebling's Sons Co.* v. *Humbolt, etc., Co.*, 112 Cal. 288, 44 Pac. 568. See, also, *Hinckley* v. *Field's Biscuit, etc., Co.*, 91 Cal. 136; *Wilson* v. *Hind*, 113 Cal. 357, 45 Pac. 695.

In *Farmers Loan and Trust Co.* v. *Canada, etc., R. W. Co.*, 127 Ind. 250, a sub-contractor is said to be one who takes from the principal contractor a specific part of the work. In that case it is said, "we do not believe that a laborer, working by the day, or a materialman who delivers ties or lumber, is a sub-contractor within the meaning of our lien law."

While our statute is broad in its terms, and has been liberally construed in favor of laborers and mechanics, and persons furnishing material and machinery for factories, yet its provisions are not broad enough to include machinery furnished as in this case.

The machine works stands in the same relation to the appellee that a materialman does to a contractor. The rights of appellant in this case are not different from what they would have been had appellee employed a contractor to alter and repair his factory by placing therein an engine and boiler to be furnished by the contractor, and the engine and boiler had been sold to such contractor by the machine works. The fact that the appellee, with his own employes placed the machinery in the factory cannot enlarge appellant's rights. Appellee's liability for the value of the boiler was in no way conditioned upon its being placed in his factory, but his liability attached, as between him and the machine works, as soon as the boiler had been placed on board the car at Indianapolis. In the case at bar, the machine works corporation simply sold a marketable commodity. When it

placed the boiler on the car at Indianapolis its control over it ceased. No work was to be done under any contract, nor could the machine works control its final disposition. Under the facts found, if the boiler had been destroyed after it was placed on the car, it would have been the appellee's loss. Appellee could have placed the boiler in his factory at Greenwood or he could have sold it as soon as it was put on board the cars by the machine works. The appellee was bound by no contract with any one, the carrying out of which would enhance the value of his factory. The statute gave the machine works the right to a lien, not as a contractor, but as a materialman. The distinction between the two must be kept in view if property owners are to have proper protection. If one materialman, furnishing material to another materialman, has a right to a lien, then any materialman, no matter how far removed, has the same right, and all he has to do is to show that he furnished the material to be used in that particular building and it was so used. A materialman should be, and is, protected for any machinery furnished to a person authorized to put the same in a building, whether such person be the owner or a contractor or sub-contractor. Beyond this the statute does not go in terms, and should not go by implication.

In the case at bar, appellant did not furnish the boiler to appellee, nor to any one authorized to place it in appellee's factory, nor to any one authorized, either expressly or by implication, by appellee to purchase it.

The statute makes no provision for a lien in favor of one who simply sells materials to another who is himself but a materialman.

Judgment affirmed.

COMSTOCK, C. J., took no part in this decision.